UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| SCOTTY LEE VEST, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 5:19-CV-00486-MAS** |
| v. | ) | |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION & ORDER

Plaintiff Scotty Lee Vest ("Vest") appeals the denial of the Commissioner's denial of his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("SSA").[1] Before the Court are the parties' cross-motions for summary judgment. [DE 16, 18]. For the reasons here discussed, the Court finds that the Administrative Law Judge ("ALJ") applied the proper legal framework and supported her non-disability finding with substantial evidence in the record. The Court grants the Commissioner's motion and denies Vest's competing motion.

---

[1] The legal standard for SSI claims mirrors the standard for disability insurance benefit ("DIB") claims. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). Though only an SSI claim is at issue here, the Court generally references SSI and DIB case law interchangeably, mindful of the particular regulations pertinent to SSI claims.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Vest, then 42 years old, protectively filed an SSI application on January 14, 2016, alleging disability beginning February 2, 2007.[2]   [R. at 50, 220, 231].   Vest attended school through completion of the seventh grade and has prior work experience as a dishwasher, dye mixer, drive-through cashier, and fry cook.   [R. at 110, 401–02].   ALJ Karen Jackson conducted an administrative hearing (at which Vest was present) on May 5, 2017, and she denied Vest's SSI claim initially on June 22, 2017.   [R. at 102, 232].   On October 16, 2017, the Appeals Council vacated ALJ Jackson's June 22 decision and remanded the case for consideration of certain specified issues.   [R at 240–41].   Specifically, the ALJ was directed to obtain additional evidence regarding Vest's impairments to complete the administrative record, further evaluate third-party statements, provide additional rationale, and further evaluate Plaintiff's residual functional capacity ("RFC") during the at-issue period and explain the weight assigned to treating and non-treating sources.   [R. at 19–20].

ALJ Jackson conducted a second hearing on October 24, 2018.   [R. at 50].   Non-attorney representative Patsy Hughes represented Vest at the October 2018 administrative hearing, and impartial Vocational Expert ("VE") Laura Lykins was also present and testified.   [R. at 50–99].   On December 21, 2018, in a thorough and lengthy written opinion, ALJ Jackson again found that Vest was not disabled during the relevant period[3] and denied Vest's SSI application.   [R. at 19–

---

[2] The alleged disability onset date for the present SSI application falls one day after the denial of Vest's previous application for DIB and SSI benefits (filed on August 16, 2005 and denied on February 1, 2007).   [R. at 144–48].   Those matters are administratively final and are not at issue in this appeal.

[3] The relevant period in this case—during which Vest must establish that he was disabled—extends from SSI application filing on January 14, 2016 through the ALJ's corresponding decision on December 21, 2018.   Though evidence preceding the relevant period may be relevant to establish Vest's longitudinal medical record, the proof ultimately must pertain somehow to Vest's disability status during the current SSI application's pendency.   *See, e.g.*, *Cauthen v. Saul*, 827 F. App'x 444, 446 (5th Cir. 2020) (noting that a plaintiff "must show that she meets the statutory

40].  ALJ Jackson found that Vest had not engaged in substantial gainful activity since the SSI application date and that he had the following severe impairments: degenerative disc disease of the lumbar spine, history of cervical strain/diffuse idiopathic skeletal hyperstosis ("DISH"), degenerative joint disease of the right hip and right ankle, asthma, Marfan syndrome,[4] major depressive disorder, and anxiety disorder.  [R. at 22].  She determined, however, that the impairments either individually or in combination did not meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 21–24].  *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.  [*Id.*].

ALJ Jackson ultimately concluded that Vest had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with certain outlined exertional and non-exertional limitations.  [R. at 24–25].  For instance, the ALJ found that Vest could lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently, could walk/stand or sit for six hours out of an eight-hour workday, could frequently climb stairs, could occasionally climb ladders or ropes, could frequently stoop and kneel, and should avoid concentrated exposure to extremely cold temperatures, humidity, and fumes/gases, among other things.  [*Id.*].  Additionally, the ALJ determined that Vest was limited to performing simple routine work tasks, could maintain attention and concentration for such tasks in two-hour segments, could adapt to gradual workplace changes, could frequently

---

definition of disability while her SSI application was pending" and clarifying that the relevant period was between application filing and the decision date); *see id.* (explaining that, though "disability evidence completely unrelated to the relevant period is irrelevant to adjudication of the claim[,] . . . pre-application medical records may be relevant to the existence of a disability during the relevant period" in some instances).

[4] Marfan Syndrome is a genetic disorder impacting connective tissues in the body; it typically affects the heart and blood vessels, and individuals with Marfan Syndrome tend to have tall, slender builds with disproportionately long extremities.  *See* Dana Sparks, *Understanding Marfan Syndrome*, Mayo Clinic (Oct. 23, 2019), https://newsnetwork.mayoclinic.org/discussion/infographic-marfan-syndrome/.

interact with supervisors and coworkers and occasionally interact with the general public, and should not have requirements for fast-paced production quotas or goals. [*Id.*].

Though ALJ Jackson held that Vest could not perform past relevant work (*see* 20 C.F.R. § 416.965), she found—informed by VE testimony and based on Vest's age, education, work experience, and RFC—that jobs existed in significant numbers in the national economy that Plaintiff could perform. [R. at 38–39]. *See* 20 C.F.R. §§ 416.969, 416.969a. These representative areas of work, as described in the Dictionary of Occupational Titles ("DOT"), included: packaging and sorting, weighing, measuring, checking, and inspecting, and bench assembly work. [R. at 39]. ALJ Jackson thus found that Vest was not disabled under the SSA during the pendency of his benefits application. [R. at 40]. *See* 20 C.F.R. § 416.920(g).

On October 15, 2019, the Appeals Council denied Vest's request for review of the ALJ's December 2018 decision. [R. at 1]. Vest subsequently filed this action in December 2019 [DE 1], and the parties filed cross-motions for summary judgment in July and August 2020 [DE 16, 18]. This matter is now ripe for review and resolution.

## II.   LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows

4

considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments. [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§

416.920(a)(4)(i), 404.1520(a)(4)(i).  In the second step, the ALJ determines whether the claimant

suffers from any severe impairments.  *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii).  In the third

step, the ALJ decides whether such impairments, either individually or collectively, meet an entry

in the Listing of Impairments.  *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).  In the fourth step,

the ALJ determines the claimant's RFC and assesses whether the claimant can perform past

relevant work.  *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  Finally, in the fifth step, the burden

shifts to the Commissioner.  The ALJ must consider and decide whether there are jobs that exist

in significant numbers in the national economy that the claimant could perform based on RFC,

age, education, and work experience.  *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).  If the ALJ

determines at any step that the claimant is not disabled, the analysis ends there.

## III.   ANALYSIS

Plaintiff broadly argues that the ALJ's non-disability determination—in particular, her

RFC conclusion and reliance upon the VE testimony—is not supported by substantial evidence.

Specifically, Vest argues that the ALJ improperly rejected the opinions of treating and examining

sources without adequate explanation for the weight assigned to them.  Vest further argues that the

hypotheticals ALJ Jackson posed to the VE did not appropriately reflect the impairments and

limitations indicated by the sources the ALJ relied upon.  The Court addresses, and ultimately

rejects, each contention in turn.

### A.   THE ALJ DID NOT IMPROPERLY DISCOUNT THE IDENTIFIED TREATING AND EXAMINING SOURCES' OPINIONS, AND HER ULTIMATE RFC CONCLUSION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.[5]

Vest first argues that ALJ Jackson provided insufficient explanation for her decision to

assign little weight to the opinions of Vest's treating neurologist, Dr. Alexander Landfield, M.D.,

---

[5] This portion of Vest's arguments focuses exclusively on the medical opinions, evidence, and RFC findings concerning Vest's exertional limitations.  Consistent with Vest's own framing

and a state agency examining consultant, Dr. James Owen, M.D.  He asserts that, absent support from these purportedly critical opinions, the ALJ's RFC determination was not supported by substantial evidence.  For the reasons discussed below, the Court finds that the ALJ did not improperly discount either Dr. Landfield's or Dr. Owen's opinions, and that ALJ Jackson's RFC finding is supported by substantial evidence from the full administrative record.

### 1.   Dr. Landfield's Opinions

Per the record, Dr. Landfield's neurology practice, Kentucky Neurology & Rehab, treated Vest from approximately April 2017 through the fall of 2018.  [R. at 829, 845–864].  During that period, Vest saw Dr. Landfield regularly, and he also saw Advanced Practice Registered Nurse ('APRN') Elizabeth Northcutt.[6]  [Id.].  In June 2017, Dr. Landfield advised that Vest, "[d]ue to his medical condition," could not "sit or stand for more than 20" minutes.  [R. at 829].  In January 2018, APRN Northcutt opined that Vest had "been diagnosed with a chronic medical condition which does not permit him to obtain gainful employment," and, accordingly, that Vest was "permanently disabled."  [R. at 830 (emphasis omitted)].  Finally, in September 2018, Dr. Landfield rendered a nearly identical opinion, stating that Vest suffered from a chronic medical condition that precluded work and therefore was permanently disabled.  [R. at 861].

---

of the issues, the Court analyzes only the physical evidence and corresponding ALJ findings in this section of its discussion.

[6] Vest does not specifically argue that Ms. Northcutt's independent opinion should have been assigned greater weight, or that the ALJ should have characterized her as a treating source. Indeed, as an APRN, Ms. Northcutt is an "other source" rather than an "acceptable medical source" under the regulations, and only acceptable medical sources may be designated as treating sources. *See, e.g.*, *Young v. Berryhill*, No. 3:17-CV-00970, 2018 WL 2947860, at *6 (D. Conn. June 12, 2018) (explaining this distinction and outlining the relevant Chapter 404 and 416 regulations). Vest simply cites Ms. Northcutt's opinion and findings as part of the body of evidence consistent with and supportive of Dr. Landfield's treating source opinion.  Accordingly, in accordance with Vest's approach, the Court discusses Ms. Northcutt's findings primarily as they relate to Dr. Landfield's treating source opinion.

The ALJ assigned little weight to all three opinions (Dr. Landfield's June 2017 and September 2018 opinions, and APRN Northcutt's January 2018 statement).  [R. at 37].  She found that the opinions were unhelpfully vague, failing to identify the allegedly disabling chronic conditions.  Moreover, she found that the opinions did not include or reference clinical findings explaining why the chronic conditions were allegedly disabling, and she further noted that the opinions were not entirely consistent with the objective medical evidence of record.  Vest challenges the ALJ's weight assignment, arguing that ALJ Jackson violated the treating source rule as to Dr. Landfield's opinions.  Vest contends that Dr. Landfield's opinion is well-explained when referenced in conjunction with his treating notes, and that it is consistent with Dr. Landfield's own findings and other medical evidence (including Ms. Northcutt's findings and opinion).

The Court first determines whether Dr. Landfield was, in fact, a treating source.  *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011).  Under the regulations, it appears that Dr. Landfield does so qualify, given his ongoing treatment relationship with Vest and his status as an acceptable medical source (*i.e.*, a licensed physician).  *See id*.; 20 C.F.R. § 416.927(a)(2).  Next, for any treating source opinion, the Court must ensure that the ALJ complied with the applicable regulations in assigning it weight.  If an ALJ does not assign controlling weight to a treating source opinion, she must evaluate it per the factors outlined in § 416.927(c)(2) and is required to "give good reasons . . . for the weight" ultimately assigned to the "treating source's medical opinion." 20 C.F.R. §§ 416.927(c), (c)(2).  Such "reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 2996)).  The treating source rule is more than just a mere formality; it is critical to permit meaningful review of

the ALJ's decision and to evaluate the ALJ's compliance with the governing regulations. *Id.* at 938.

Here, the ALJ elected, in her discretion, not to assign Dr. Landfield's opinion controlling weight. Instead, upon balancing the § 416.927(c)(2) factors,[7] ALJ Jackson decided to assign it little weight because she found it conclusory, non-specific, and unsupported by objective medical evidence. ALJ Jackson's rationale in this regard is reasonable, supported by substantial evidence in the record, and—albeit brief—adequate, in context of the full decision, to permit meaningful judicial review. First, neither the June 2017 nor the September 2018 Dr. Landfield opinion specifies the underlying chronic conditions deemed disabling. Though Vest accurately notes that Dr. Landfield's treatment notes indicate several apparently chronic conditions, neither of Dr. Landfield's statements identifies which of these conditions is, individually or in combination, the basis for his disability opinion or his view that Vest could not sit or stand for more than 20 minutes at a time. [*See* R. at 843–860 (Ex. 21F) (identifying chronic impairments including lumbar disc disease, osteoarthritis, lumbar radiculopathy, muscle spasms, and Marfan Syndrome, but not tying them to any specific work- or activity-related limitations or concrete disability finding)].

Throughout the treatment notes, Dr. Landfield mentions various objective symptoms that could conceivably stem from the identified impairments and could, in theory, limit Plaintiff's daily functioning. [*See*, *e.g.*, R. at 847, 853–60 (noting gait/limp issues, to some extent)]. However, Dr. Landfield's opinion statements do not offer any explanation for why these impairments limit Vest to 20 minutes of standing/sitting per day, or, moreover, why such a limitation alone would render

---

[7] These include: the length of the treatment relationship, the nature and extent of the treating relationship, the supportability of the opinion, its consistency with the record, the source's specialization (if any), and any other relevant considerations (such as the extent to which the source is familiar with the claimant's overall medical record). 20 C.F.R. § 416.927(c)(2).

9

Vest entirely and permanently disabled.  In short, even considered in conjunction with the treatment notes, Dr. Landfield's conclusory and vague opinions fail to include the requisite analytical link between the clinical findings and the medical conclusions, leaving the conclusions fatally unsupported.  To fill in the gaps and supply the needed connection, the ALJ would have been required to interpose her own medical determinations based on the clinical data, which she may not do.  *See*, *e.g.*, *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir.1996)) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").  Rather, based on the evidence from Dr. Landfield that was available to ALJ Jackson, she reasonably found the vague opinions unsupported by sufficient explanation.

Further, Dr. Landfield's opinions are not entirely consistent with or supported by his own clinical findings.  Though Exhibit 21F indicates occasional limping/imbalance (i.e., observed ataxic and antalgic gaits), apparently worsening from January 2018 forward, other objective findings indicate normal functioning.  For instance, Dr. Landfield regularly observed normal reflexes, normal and unimpaired motor strength, and intact sensation.  [R. at 845, 846, 848, 851, 853, 855, 857, 859].  Given the mix of normal findings (largely related to mental status, motor strength, and sensation) and abnormal findings (largely related to gait and lumbar tenderness), it is not immediately clear how the findings interact and translate into functional limitations.  There is some support in Dr. Landfield's objective records for his disability opinions, but it is far from overwhelming or unequivocal, so as to make plain the medical foundation for such conclusory opinions.  This leaves Dr. Landfield's opinions without the necessary explanatory or clinical scaffolding, and ALJ Jackson reasonably found them internally unsupported.

Finally, neither APRN Northcutt's limited notes, nor the other evidence in the record, is so supportive of Dr. Landfield's treating source opinions as to cure their patent deficiencies and elevate them to controlling status.  Between December 2017 and January 2018, APRN Northcutt found that Vest suffered from lower back pain and difficulty walking, identifying conditions similar to those Dr. Landfield diagnosed (such as lumbar radiculopathy and lumbar sciatica).  [R. at 862, 864].  Though broadly consistent with Dr. Landfield's findings, APRN Northcutt's notes are exceptionally brief, devoid of detail, and lacking objective foundation.  There are no test results or other diagnostic data accompanying the brief treatment notes from Ms. Northcutt.  Nor, notably, is the other evidence of record so wholly supportive of Dr. Landfield's opinions that it renders them categorically well-founded.  As in most cases, the medical evidence here is somewhat mixed. Some proof referenced by the ALJ indicates potential need for more restrictive limitations.  [R. at 30 (ALJ discussion); R. at 666 (opining that Vest would have "moderate-to-severe difficulty lifting, handling, or carrying objects" in April 2016); R. at 681–82 (noting in August 2016 that Vest presented with chronic pain unalleviated by prescribed medication, and that Vest's range of motion was somewhat decreased by pain and stiffness); R. at 776 (noting similar pain findings in December 2016).

Other evidence from within the relevant period, though, suggests more normal functioning with only mild/moderate limitations.  [R. at 29, 31 (ALJ discussion); R. at 630–31 (noting mild degenerative changes to the medial malleolus (inner ankle) and mild hip joint narrowing in February 2016); R. at 774–75 (observing normal musculoskeletal system without deformities and a "smooth" gait "other than slight limp" in January 2017); R. at 771–72 (reflecting normal, mild, and mild-to-moderate findings in April 2017 lumbar spine imaging); R. at 867 (July 2017 MRI results indicating mild-to-moderate spinal stenosis); R. at 666 [Dr. Owen observing a normal gait

in April 2016)].  Ultimately, the ALJ is tasked with balancing the respective findings, and nothing in this record demonstrates that AJL Jackson unreasonably discounted Dr. Landfield's opinions when considered against the full backdrop of proof.

Accordingly, the ALJ's weighing of Dr. Landfield's treating source opinions is reasonable in context of the complete record.  Though brief, her weight assignment—when read in conjunction with the decision as a whole, in which ALJ Jackson carefully surveyed all factual evidence—is sufficient to convey the crux of her analysis and enable appropriate judicial review. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (observing that courts must "read the ALJ's decision as a whole and with common sense"); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (recognizing that "it is proper to read the ALJ's decision as a whole . . . because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at" various steps in the sequential process).  It is apparent that ALJ Jackson undertook a balancing of the § 416.927(c)(2) factors as required by the regulatory framework, and that she found Dr. Landfield's opinions vague, inadequately supported internally or by his treatment notes and findings, and not entirely consistent with other evidence of record.  *See*, *e.g.*, *Elliott v. Saul*, No. 3:18-CV-00720, 2019 WL 4748311, at *4 (M.D. Tenn. Sept. 30, 2019) (observing, in relation to the parallel Chapter 404 DIB provision, that "[w]hen determining the weight to give the opinion of a treating physician, ALJs need not explicitly mention in their decisions every factor" listed in the regulation) (collecting cases).  And, for the reasons discussed, ALJ Jackson's handling of the factors and ultimate weight assignment is supported by substantial evidence.  The ALJ thus did not violate the treating source rule in this case.

### 2.   Dr. Owen's Opinion

Dr. Owen, a state agency medical consultant, examined Vest in April 2016.  [R. at 664]. Though not a treating source under the regulations, Dr. Owen is an examining source typically

entitled to comparatively greater weight than non-examining sources. "*Generally*, [the Commissioner] give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [him]." 20 C.F.R. § 927(c)(1) (emphasis added). However, the regulation "fails to mandate such prioritizing and lists several other factors that the ALJ must consider." *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 901 (6th Cir. 2019). Such factors, as previously outlined, include the frequency of examination, the opinion's supportability, its consistency, and the provider's specialization, among other things. 20 C.F.R. § 927(c)(2)(i), (3)-(5).

Following his single consultative examination of Vest on April 19, 2016, Dr. Owen submitted a six-page medical report summarizing his physical examination findings, as well as Vest's subjective statements concerning his medical history and current pain. [R. at 664–68 (Ex. 9F)]. At the conclusion of the narrative portion of the report, Dr. Owen opined, as to Vest's "ability to do work-related activities," that "he would have moderate-to-severe difficulty lifting, handling or carrying objects." [R. at 666]. Dr. Owen included no further detail as to the basis for the opinion, and he did not discuss any other perceived functional limitations. ALJ Jackson's decision reflects thorough review and consideration of Dr. Owen's findings and medical opinion. [R. at 30]. ALJ Jackson ultimately assigned the opinion limited weight, finding the opinion "vague and not consistent with [Dr. Owen's] examination findings or the medical evidence as a whole, including the MRI results and the clinical findings discussed at Exhibit No. 23F." [R. at 37].

Plaintiff argues that the ALJ's rationale in this regard failed to provide legitimate reasons for discounting Dr. Owen's opinion. He contends that the medical evidence in the full record "is consistent with debilitating limitations[,]" and that Dr. Owen's notes reflecting right ankle reflex issues and diminished sensation and motion range further support the functional opinion. [DE 16-

1, at Page ID # 936].  Vest ultimately maintains that ALJ Jackson insufficiently explained his limited weight assignment.  [*Id.*, at Page ID # 937].

However, as ALJ Jackson found, Dr. Owen's proposed limitations on carrying, lifting, and handling objects are not entirely consistent with or thoroughly supported by his own examination notes and findings.  Though Dr. Owen indeed found below-average grip strength numbers in both Vest's right and his left hands,[8] he also noted, somewhat inconsistently, that Vest's "[s]trength, sensation, and coordination all appear[ed] to be within normal limits."  [R. at 665–66].  Moreover, Dr. Owen's report notably lacks many supportive clinical findings; on the attached diagrams intended to reflect range of motion values, Dr. Owen did not record any information regarding Vest's shoulder, elbow, wrist, finger, or thumb functioning—all seemingly relevant to assessment of an individual's ability to lift, handle, and carry objects.  [R. at 667].  Accordingly, Dr. Owen's findings are only minimally supported by even his own clinical data.  Contrary to Vest's argument, Dr. Owen's brief finding as to right ankle reflex issues [R. at 666] has little to do with his strictly cabined opinion, that involved *only* Vest's lifting/carrying/object-handling capabilities.  Dr. Owen did not connect the statement regarding Vest's ankle reflexes to his ultimate opinion in anyway, and it is not at all clear how the ankle reflex finding specifically relates to or supports Dr. Owen's lifting/carrying/object-handling conclusion.

Additionally, as ALJ Jackson also noted, these opined restrictions are not entirely consistent with the other objective medical evidence of record.  ALJ Jackson correctly observed that the July 2017 MRI reflected normal grip strength (5/5 bilaterally) and normal shoulder

---

[8] Dr. Owen recorded 23 kilograms in Vest's right hand and 34 kilograms in his left hand. [R. at 665].  Normal grip strength readings for Vest's age group are typically 45-47 kilograms. *See* Nicola M. Massy-Westropp, *Hand Grip Strength: age and gender stratified normative data in a population-based study*, U.S. National Library of Medicine, National Institutes of Health (Apr. 14, 2011).

abduction (likewise 5/5). [R. at 37; R. at 867 (Ex. 26F) (July 2017 MRI results)]. The moderate-to-severe restrictions Dr. Owen assessed are also inconsistent with relatively normal grip and motor strength findings from Dr. Landfield, Plaintiff's treating provider. [*See, e.g.,* R. at 845 (noting 5/5 motor strength, indicating a full range of motion, in all upper and lower extremities and reflecting normal reflexes in April 2017), 846 (same in June 2017), 848 (same in November 2017), 851 (indicating normal (5/5) musculoskeletal functioning in both upper and lower extremities in December 2017), 853 (same in January 2018), 855 (same in February 2018), 857 (same in July 2018), 859 (same in August 2018)]. The motor strength evidence in the record is mixed, and not all supports or is consistent with Dr. Owen's relatively bare medical opinion.

The ALJ's decision confirms that she properly applied the regulatory standards, considering such factors as Dr. Owen's opinion's level of detail and explanation, its supportability, and its overall consistency with the record as a whole. Moreover, her weighing of the opinion is supported by substantial evidence, as discussed. ALJ Jackson thus did not improperly discount the limited and fairly vague opinion of Dr. Owen, based on his one-time examination of Vest.

### 3.     ALJ Jackson's Ultimate RFC Conclusion

Lastly, as an overarching matter, Plaintiff argues that the ALJ's RFC determination (at least, to the extent it reflects exertional capabilities and limitations) is not supported by substantial evidence in the record. Specifically, Vest argues that, without greater reliance on the evidence from Dr. Landfield and Dr. Owen, any RFC determination is left medically unsupported. He further asserts that the ALJ erred in relying in part on the 2013 opinion of consultative examiner Dr. Fahira Zaheer, M.D., criticizing it as vague and outdated. [DE 16-1, at Page ID # 937].

The ALJ found that Vest could perform light work, with several specified qualifiers.[9]  For instance, ALJ Jackson concluded that Vest could lift, carry, push, and pull 20 pounds occasionally[10] and 10 pounds frequently, could walk, sit, and stand for roughly six hours out of an eight-hour workday, could frequently climb stairs and ramps and occasionally climb ladders, could frequently stoop, kneel, and crouch, and should avoid concentrated exposure to extreme temperatures, humidity, and fumes.  [R. at 24].  In formulating Vest's RFC, it is apparent that the ALJ thoroughly surveyed all of the medical (objective and opinion) and nonmedical proof in the record.  ALJ Jackson methodically discussed and summarized the evidence, and the decision demonstrates her careful consideration of the full record.  [R. at 24–38].  *See also Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (observing that courts "read the ALJ's decision as a whole and with common sense"); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (recognizing that "it is proper to read the ALJ's decision as a whole").

Plaintiff challenges the RFC finding, arguing that any reliance on Dr. Zaheer's 2013 opinion was error, and contending that the ALJ did not cite enough medical opinion or functional limitation evidence to support the RFC.  As to Dr. Zaheer's May 2013 opinion, the Court agrees

---

[9] Per the regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967.

[10] "Occasionally" typically refers to activity occurring rarely up to one-third (roughly two hours) of a regular workday.  *See Narug v. Saul*, No. 2:19-CV-490-JD-JEM, 2020 WL 8408471, at *4 (N.D. Ind. Dec. 11, 2020), *report and recommendation adopted*, No. 2:19-CV-490 JD, 2021 WL 355990 (N.D. Ind. Feb. 2, 2021).

that the ALJ's relatively brief weight assignment explanation [R. at 37] could benefit from greater detail. Most notably, it is not entirely clear whether the ALJ considered the opinion's age before weighing it. Dr. Zaheer's opinion was rendered approximately two-and-a-half years before the application filing date, *i.e.*, the start of the relevant period. *See Cauthen*, 827 F. App'x at 446 (clarifying that the relevant period was between SSI application filing and the decision date).

However, despite the admitted room for improvement in the clarity and detail of the ALJ's analysis, the ALJ's assignment of only moderate weight, coupled with the limited purpose for which ALJ Jackson used the opinion—essentially, merely to demonstrate that Vest is not entirely prohibited from gainful activity—is reasonable in context of the ALJ's full opinion and is ultimately supported by substantial evidence. *See generally Cutlip*, 25 F.3d at 286 (characterizing substantial evidence simply as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Critically, in contrast to the cases where an ALJ's reliance on an outdated opinion has been found to be reversible error, Vest does not here argue (and the record does not indicate) any material changes in or worsening of Vest's chronic conditions between the May 2013 opinion and the relevant period. *Cf. Karns v. Astrue*, No. 3:10-CV-318, 2012 WL 1185990, at *2 (S.D. Ohio Apr. 9, 2012), *report and recommendation adopted*, 2012 WL 1463546 (S.D. Ohio Apr. 27, 2012) (concluding that an outdated medical source opinion that did not account for an intervening heart attack could not constitute substantial evidence and that the ALJ's reliance on it was error, as the Court could not assume that the medical opinion would not have changed based on the new and material information); *Elliot v. Comm'r of Soc. Sec.*, No. 3:15-CV-00464, 2017 WL 489743, at *5 (S.D. Ohio Feb. 7, 2017), *report and recommendation adopted*, No. 3:15-CV-464, 2017 WL 749005 (S.D. Ohio Feb. 24, 2017) (finding that the ALJ erred in relying on a

nurse's opinion rendered more than five years before the SSI application date and which predated objective evidence showing worsening of the plaintiff's condition).

Rather, the later evidence in this case generally shows only mild degenerative changes in Vest's condition within the relevant period, and the proof within the relevant window is largely consistent with Dr. Zaheer's functional findings. [*See* R. at 630–31 (mild degenerative changes to the inner ankle and mild hip joint narrowing in February 2016); R. at 774–75 (normal musculoskeletal system without deformities and a "smooth" gait "other than slight limp" in January 2017); R. at 771–72 (normal, mild, and mild-to-moderate findings in April 2017 lumbar spine imaging); R. at 867 (mild-to-moderate spinal stenosis); *compare* R. at 606 (Dr. Zaheer finding relatively normal musculoskeletal functioning with some hip movement limitations, unimpaired ability to rise from a sitting position and to bend/walk, and normal grip strength and motor movement in May 2013) *with* R. at 845, 846, 848, 851, 853, 855, 857, 859 (Dr. Landfield noting normal motor strength and musculoskeletal functioning on several occasions between April 2017 and August 2018) *and* R. at 666 (Dr. Owen noting normal gait and station and unimpaired ability to get on an off the examination table in April 2016).

The ALJ's thorough discussion of all of the medical and nonmedical evidence makes clear that she considered the full record, and the proof she specifically mentions at various points in her analysis (as discussed above) demonstrates the consistency between Dr. Zaheer's opinion and later medical information. Accordingly, given the Zaheer opinion's relative consistency with later evidence and the absence of any material intervening medical events or diagnoses that would invalidate the earlier findings, Dr. Zaheer's opinion is not necessarily stale or irrelevant, and the ALJ's partial reliance on it is not categorical error in the context of this specific record. *See, e.g.*, *Cauthen*, 827 F. App'x at 446 (explaining that, though "disability evidence completely unrelated

to the relevant period is irrelevant to adjudication of the claim[,] . . . pre-application medical records may be relevant to the existence of a disability during the relevant period" in some instances); *Matthews v. Saul*, No. CV 18-1110 (RC), 2020 WL 5440573, at *12 (D.D.C. Sept. 10, 2020) (observing that older medical records are not *per se* stale because of later information, provided the ALJ's decision in full permits courts to discern a logical connection between the opinion and the weight assigned).   Reading ALJ Jackson's opinion as a whole, she found Dr. Zaheer's opinion relatively consistent with other evidence, and not rendered obsolete by later contrary information.   Such a determination is not unreasonable on this record, and the ALJ's moderate weight assignment (and limited use of the opinion) is substantially supported.   The Court thus cannot disturb the finding, even if it may have weighed the opinion differently upon independent review.

Finally, the ALJ Jackson did not require additional medical source opinions in order to reach a substantially supported overall RFC conclusion.   The Sixth Circuit has expressly rejected the contention that an ALJ's failure to cite a specific medical opinion supporting the RFC conclusion categorically renders it unsupported by substantial evidence.   *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (collecting supportive cases).   *See also Woelk v. Comm'r of Soc. Sec.*, No. CIV.A. 13-12411, 2014 WL 2931404, at *7 (E.D. Mich. May 15, 2014), *report and recommendation adopted*, No. 13-12411, 2014 WL 2931411 (E.D. Mich. June 30, 2014) (noting that an ALJ's reliance on medical evidence rather than medical opinions in support for the RFC "is not *per se* grounds for error" and emphasizing that and ALJ must make the RFC determination based on the entire record, including

medical and nonmedical evidence and other factors, under the SSA regulations);[11] 20 C.F.R. 416.945(a)(3).

In any event, ALJ Jackson indeed assigned at least *some* weight to the various opinions of Dr. Zaheer, Dr. Owen, and Dr. Landfield.  Such weight assignments were reasonable and supported, as already discussed.  The medical evidence cited and discussed in detail by the ALJ, all within the RFC section of her decision, further offers substantial support for the ultimate RFC conclusion.  The record supports ALJ Jackson's functional determinations as to Vest's particular capacity to lift/carry [*see* R. at 867, 845–859 (unimpaired motor and grip strength), 665 (Vest himself representing an ability to lift 10 pounds)], walk/stand/sit [*see* R. at 774–75 (mostly smooth gait, no need for a cane, and no musculoskeletal abnormalities), 666 (normal gait, walk, and ability to get up and down from table), 630–31 (only mold ankle and hip joint impairment)], climb stairs and stoop/kneel [*see* R. at 606, 666], and tolerate exposure to humidity and fumes [*see* R. at 51 (hearing testimony reflected Vest's undisputed chronic pulmonary obstructive disorder ("COPD") diagnosis and related respiratory issues].  Based on all of the medical proof (both objective and opinion) amassed by ALJ Jackson in the RFC-specific portion of her discussion, the record

---

[11] As the *Woelk* court mentioned, district-level cases (notably, predating the Circuit's clear statement in *Mokbel-Aljahmi*) have found that an ALJ is not qualified to interpret raw medical data and that, where the objective medical evidence does not clearly correlate with functional/exertional findings, the raw data itself cannot, alone, substantially support an RFC conclusion.  *Woelk*, 2014 WL 2931404, at *7–8 (discussing cases).  This is not a case, though, of an ALJ citing only raw, cryptic medical data and test results to support the RFC.  The ALJ gave at least some weight to various opinions that are in part supportive of the RFC, and she further laboriously outlined the medical evidence—which largely includes either findings directly phrased in terms of functional limits and abilities, or findings that are obviously translatable into such terms without specialized medical knowledge.  For instance, the repeated findings in the record concerning Vest's motor and grip strength, his ability to get on and off tables and to walk with only moderate difficulty, and the absence of musculoskeletal abnormalities (as all discussed at length in this opinion) are directly related to the functional exertional limitations reflected in the RFC.

confirms that substantial evidence supports the exertional limits reflected in the ultimate RFC finding in this case.

**B.     THE ALJ'S HYPOTHETICALS TO THE VE ACCURATELY REFLECTED THE DETERMINED MENTAL FUNCTIONING LIMITATIONS.**[12]

Vest next argues, briefly, that the VE testimony concerning job availability cannot constitute substantial evidence supporting the ALJ's non-disability finding because the hypotheticals presented to the VE did not accurately reflect the mental impairments that the ALJ assessed.  Specifically, Vest asserts that ALJ Jackson, despite assigning great weight to the opinion of Dr. Emily E. Skaggs, Psy. D, did not appropriately incorporate Dr. Skaggs's findings into the VE hypotheticals.[13]  In June 2016, Dr. Skaggs performed a consultative examination and found, among other things, that Vest showed normal memory and concentration, appropriate and logical thought processes and content, average intellectual functioning, adequate judgment and insight, and normal decision-making skills.  [R. at 35–36 (ALJ discussion); R. at 670–80 (Ex. 10F)].

In terms of functional limitations, Dr. Skaggs opined that Vest had a slightly limited ability to understand/remember and to carry out simple, repetitive tasks, a markedly limited ability to tolerate workplace stress and pressure, and a moderately limited ability to sustain attention and concentration and to deal with co-workers and supervisors.  ALJ Jackson accorded these opinions significant weight, and she specifically noted that the mental RFC's inclusion of a finding that Vest should have no requirements for fast-paced production goals or quotas reflected Dr. Skaggs's

---

[12] Unlike the prior argument regarding the RFC's exertional limitations, Vest's second argument substantively pertains to only the mental functioning limitations assessed.

[13] Vest does not, however, challenge the weight assigned to Dr. Skaggs's opinion, or more broadly challenge whether the mental RFC component is otherwise supported by substantial evidence.  As these arguments are not presented, the Court does not address them and deems them waived.  *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) (reiterating the settled rule that omitted or undeveloped arguments are deemed waived).

noted marked stress tolerance limitations.  [R. at 38].  The ALJ further limited Vest's adaptability capacity to only gradual changes in a routine work environment.  [R. at 25].

Nonetheless, Plaintiff insists (somewhat inexplicably, given the ALJ's relatively straightforward analysis on this front) that it is "unclear" how ALJ Jackson accounted for the marked stress tolerance limitations.  [DE 16-1, at Page ID # 939].  Vest does not, however, acknowledge the ALJ's explicit inclusion of the no-quota requirement or the ALJ's express intent that such a requirement targeted Vest's stress tolerance limitation. Nor does Vest explain his view that the ALJ's incorporation of the limitation is unclear.  Accordingly, contrary to Vest's assertion, the record is indeed clear that the ALJ's RFC finding and assessed limitations directly accounted for Dr. Skaggs's opined stress tolerance limitations.  Vest provides no authority or developed argument suggesting otherwise.

Moreover, the hypotheticals that ALJ Jackson presented to the VE fully incorporated the assessed functional limitations based on Dr. Skaggs's stress tolerance opinion.  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  To the extent the ALJ's determination as to Vest's mental impairments was based on Dr. Skaggs's opinion, the hypotheticals posed accurately portrayed the opined limitations.  At the October 2018 hearing, ALJ Jackson specifically asked VE Laura Lykins about employment opportunity for an individual who could adapt only "to gradual changes in a routine work environment" and for whom there was "[n]o requirement for fast-paced production goals."  [R. at 89].  Moreover, VE Lykins expressly accounted for the no-quota circumstance in her response, noting that she was evaluating "[a]lternative light, unskilled work" and was "going

to reduce [her] figures by 50% based on the no fast-paced production." [R. at 90]. And, though the ALJ at times varied her hypothetical to gauge the job availability with different restrictions applied, she at no point removed these stress-related limitations or portrayed any greater ability to tolerate workplace pressures, specifically. [R. at 92–94].

Accordingly, the record flatly contradicts Vest's assertion that ALJ Jackson's hypotheticals to VE Lykins failed to incorporate the marked stress tolerance limitations included in Dr. Skaggs's opinion. The Court thus rejects this challenge and, absent any further argument casting doubt on ALJ Jackson's reliance on VE Lykins's testimony, the Court perceives no grounds for disturbing the ALJ's findings in this regard. ALJ Jackson's mental RFC is consistent with Dr. Skaggs's opinion and the other mental health evidence of record and reasonably received great weight (a finding Vest does not here contest), and the VE testimony was based on an accurate representation of that mental health proof. VE Lykins's testimony thus provides substantial evidence supporting ALJ Jackson's non-disability finding.

## IV.   <u>CONCLUSION</u>

For all of the reasons discussed, the Court **GRANTS** the Commissioner's motion for summary judgment (DE 18) and **DENIES** Vest's competing motion (DE 16). A corresponding Judgment follows.

This the 23rd day of March, 2021.



Signed By:
<u>Matthew A. Stinnett</u>
United States Magistrate Judge